JOHN C. ROTH AND HENRY HERTEL

vs.

ERNEST A. STUERKEN ET AL.

*Equity pleading : multifariousness; demurrers.*

The objection to multifariousness is that it subjects defendants to costs and delays incident to the trial of matters in which they have no concern or interest.                    p. 409

Courts exercise a sound discretion in determining whether the different subjects of a bill, or the different parties, plaintiffs and defendants, are proper to be joined in one suit.       p. 408

In general, a bill is multifarious when one of the parties is made defendant in a suit, with a part of which he has no concern.                    p. 408

But a bill is not open to the objection where it appears that the complainants have a common interest, and all of the defendants are interested in all the different questions raised, and the suit has a common object.                    p. 408

The question raised by the objection of multifariousness is one merely of convenience in conducting the suit, and does not bring in issue the merits of the case.                    p. 408

A demurrer admits the truth of all allegations that are well pleaded.                    p. 409

Where the subject-matters of a bill all grew out of an agreement between the parties for forming a land company, etc., of lands which had been bought by some of the parties for the benefit of all, the charging of different acts of violation of the agreement, by different ones of the defendants, was held not to make the bill open to the objection of multifariousness.   p. 410

*Decided December 10th, 1914.*

Appeal from the Circuit Court No. 2 of Baltimore City. (AMBLER, J.)

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, THOMAS, PATTISON, URNER, STOCKBRIDGE and CONSTABLE, JJ.

*William Colton,* for the appellants.

*Frank G. Turner,* for the appellees.

CONSTABLE, J., delivered the opinion of the Court.

This appeal is from an order overruling demurrers of the appellants, filed to an amended bill of complaint.

The bill alleges that all of the parties, both plaintiffs and defendants, with the exception of the complaining corporation, had associated themselves together for the purpose of forming a corporation for the purpose of carrying on the sand and gravel business; that prior to the formation of the corporation, and in pursuance of the plan agreed upon by the members of the syndicate, options to purchase were secured upon two separate parcels of property.   One of said options was taken in the name of George Schamberger; the consid-

eration therefor, three hundred dollars, being paid by the said Schamberger and John T. Scheu, both of whom were members of the syndicate and two of the complainants. The other option was taken in the namt of Henry Hertel, one of the defendants. It is alleged that the said options, although taken in the individual names of members of the syndicate, were, under the terms of the agreement enterd into by all of the members, intended to be for the joint benefit of all the parties to the enterprise, and were to be assigned to the corporation later to be formed.

The bill further alleges that a charter was obtained from the State of Virginia, and the Atlantic Sand and Gravel Company, Incorporated, was formed, and that four thousand shares of the common stock of said company were subscribed for by George A. Frick, a member of the syndicate, to be held by him, by agreement, for all the members of the syndicate, and to equitably distributed among them, as might thereafter be agreed upon, in accordance with the services rendered respectively, it having been agreed upon that the consideration for the stock should be the transfer to the corporation of the options secured by the efforts of the individual members of the syndicate.

It is alleged that difficulty was experienced in obtaining subscriptions for the stock of the company, and that it became necessary to obtain extentions of time on the options; and that these extentions were secured through the efforts of three of the plaintiffs; although the money payments required therefor were made through advances, to the extent of eighty-five hundred dollars, made by John C. Roth, one of the defendants. That is was understood, by and between Roth and the other members of the syndicate, that the advances were not made for his individual benefit, but for the benefit of the enterprise; and that the said Roth agreed to take preferred stock, on account of said payments and other payments to be made by him, to the extent of fifteen thousand dollars. That, at the request of Roth, the options secured

were assigned to him as security for the advances made and to be made, then for the benefit of himself and associates and then to be assigned to the corporation.

It is further alleged that offers to purchase the properties, under contracts of option, were made, and, after several consultations among the members of the syndicate, it was determined to sell; and the properties were sold; that after the payment of the balance due and the payment of the advances made by John C. Roth and others, and certain expenses and fees, there remained in the hands of Roth the sum of $8,450.00, which the said Roth had refused to account for.

It is further alleged that, unknown to the other members of the syndicate, Henry Hertel received commissions from the vendors of the properties to the amount of $1,871.25, and refuses to account for the same with his associates, contrary to the agreement that the transactions were to be for the joint benefit of the members of the syndicate, and that the said Hertel was acting for his associates at their suggestion and request, and for them and himself.

The prayers of the bill are that, the "defendants answer and discover and set forth all sums received by them from said sale of land; that the said Henry Hertel set forth all profits received by him, either as commission or otherwise; that the defendants account with the Atlantic Sand and Gravel Company, Inc., and with the other plaintiffs, for the profits of said land sold; that the defendants may be deemed to pay over to the Atlantic Sand and Gravel Company, Inc., or unto your orators, as the Court may determine, all sums of money by them, or either of them, due unto the Atlantic Sand and Gravel Co., Inc., or unto your orators as the Court may determine, on account of the profits derived from the sale of the said land, or for moneys received on account of commission or otherwise for negotiating the purchase and sale of the said land described in the bill of complaint, and that the Court may decree the proper distribution of the stock in the Atlantic Sand and Gravel Company, Inc., sub-

scribed for by the said George A. Frick, for himself and associates."

The defendants filed separate demurrers to the amended bill, and upon their being overruled this appeal was taken.

The ground relied upon in support of the demurrers is that the bill is multifarious. All of the authorities concede that it is impossible to state arbitrarily, an inflexible rule as to what will, or will not, render a bill defective because of multifariousness. The Courts have always exercised a sound discretion in determining whether the subject matters of the suit are properly joined or not, and whether the parties, plaintiffs or defendants, are also properly joined or not. The definition given by Lord Cottenham, in *Campbell* v. *Mackay,* 1 Myl. & Cr. 603, has come to be more generally recognized and followed by the text book writers and Courts than any other. In substance, he says, it exists when a party is able to say he is brought as a defendant upon a record with a large portion of which, and of the case made by which, he has no concern whatever, but, that it does not exist in a case where it appears that the complainants have common interest, and the defendants are interested in all the different questions raised upon the record, and the suit has a common object. The objection of multifariousness raises merely a question of convenience in conducting the suit. It does not go to the merits of the complainant's case and call upon the Court to decide whether the complainant has a case against any of the defendants, but the Court, in dealing with it, is simply called upon to exercise its discretion, and to decide whether both or all the causes of action, set forth in the bill, should be tried in a single suit, or should be split up and tried in two or more suits; or whether a defendant, who is a necessary party in respect to one or more matters covered by the bill, has a sufficient interest in or connection with the other matters involved in the suit to make him a proper party in respect to such other matters. As stated by the Chancellor in *Dunn* v. *Cooper,* 3 Md. Ch. 46, "due regard should

be had to the important object of advancing justice, by avoiding, on the one hand, the multiplying of unnecessary litigation, and on the other, the involving of suitors in needless and oppressive expenses. The difficulty, indeed the impossibility of laying down any rule or abstract proposition, as to what constitutes multifariousness, which can be made universally applicable, is conceded on all hands." What was said so long ago is just as applicable today. See *Story's Eq. Pl.,* secs. 530-540; *Beach Eq. Pr.,* secs. 115-119; *Williams* v. *West,* 2 Md. 198; *Kunkel* v. *Markell,* 26 Md. 409; *Neal* v. *Rathell,* 70 Md. 592; *Fiery* v. *Emmert,* 36 Md. 464; *Whitman* v. *Surety Co.,* 110 Md. 421.

Several of the Maryland cases, for instance *White* v. *White,* 5 Gill. 359, involved the settlement of two or more partnerships in which some of the defendants were connected with one or more of partnerships but totally unconnected with and disinterested in the others. This Court held, on demurrer, the bill bad for multifariousness, because it was improper to subject defendants to the costs and delays incident to the trial of matters in which they had no interest or concern.

In the present case, the truth of the allegations of the bill well pleaded being admitted by the demurrers, can the defendants contend that they are not concerned with, and have no interest in, the outcome of the cause of action each against the other? The entire question to be determined is whether or not the agreement, entered into by all of the parties, has been broken and violated by the two defendants; one in one manner and the other in another. The injuries alleged arose out of the same transaction and over the same subject matter. If the defendant Roth is liable, the defendant Hertel is interested to the extent of his proportion of the profits, and if both are liable then are both interested to the extent of their respective shares. The fountain head of the entire bill is the agreement, and, although the defendants are charged with distinct violations of it, we see no reason why these charges

should not be heard together and the whole difficulty adjusted in one suit, rather than have recourse to separate actions. They all entered together into one general undertaking, and now that differences have grown out of that same transaction, it certainly is expedient for all hands that they, since they are so closely connected, should be settled at one time. In fact it seems rather difficult to see how complete justice could be done between all parties other than by this action.

That the corporation was made a party plaintiff, in our opinion, does not create a misjoinder of plaintiffs. It is true, in one sense of the word, that their interests are in conflict, but from the allegations of the bill there is no such conflict. as would prevent the joinder, for relief for each class of plaintiffs is not asked for in a spirit of antagonism; but with a full recital of the facts the Court is asked to give such relief as is proper from those facts. Practically it is immaterial to which class it is awarded, for the parties are all of those interested in the corporation.

The order will accordingly be affirmed.

*Order affirmed, cause remanded, with costs to the appellees.*